## Max Conwisher v. Mary A. N. Johnson.

### Gen. No. 12, 597.

1. SLANDER—*by whom question as to what was intended by use of words slanderous per se, to be determined.* The determination of this question is one of fact for the jury and not one of law for the court.

2. SLANDER—*how question as to what was intended by use of words slanderous per se, to be determined.* While the language used may be slanderous *per se*, yet the intent with which the words were uttered must be gathered from the existing conditions and environment at the time they were spoken, the cause of dispute, if any existed, and the relationship of the parties and their bearing and feeling toward each other, if such is developed by the evidence.

3. SLANDER—*when refusal of court to direct verdict for defendant in action for, not erroneous.* With evidence before the jury from which they might find the intent with which the defendant used the words charged was to impute to the plaintiff the crime of larceny, it is the duty of the court to refuse to instruct the jury to find a verdict of not guilty.

4. SLANDER—*exemplary damages may be awarded in action for.* Exemplary damages may be given in cases of slander, and malice is presumed where the words uttered are slanderous *per se*.

5. VERDICT—*five hundred dollars held not excessive, in action of slander.* A judgment for $500 for wanton and unprovoked slander is not excessive.

Action of slander. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed July 2, 1906.

WEISSENBACH & MELOAN, for appellant.

FRANK M. FAIRFIELD and ELMER D. BROTHERS, for appellee; JAMES C. BROWN, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This is an action of slander brought by appellee against appellant in the Superior Court. The declaration consists of one count, and the material part of the declaration containing the actionable words charged is that on "March 28, 1902, in the county and state aforesaid, in a certain discourse which the defendant then and there had of and concerning the plaintiff, in the presence and hearing of

divers persons, falsely, maliciously, in the presence and hearing of those persons, spoke and published of and concerning the plaintiff false, malicious and defamatory words following, that is to say, he, the defendant, said that she (meaning the plaintiff) is a thief."

To the declaration appellant filed a plea of not guilty. On this issue a trial was had before the court and jury, which resulted in a verdict in favor of appellee for $500, on which judgment was entered by the court after overruling motions of appellant for a new trial and in arrest of judgment.

It is first insisted by appellant that there is a variance between the averment of the declaration as to the slanderous words alleged to have been uttered, and the proof upon the trial of the words actually spoken. The actionable words averred are, "she"—meaning appellee—"is a thief." The record discloses the words proven to have been uttered are the same as those averred. There is consequently no variance in this regard.

At the close of appellee's case and again at the conclusion of all the evidence a motion was made by appellant for the court to direct a verdict in his favor. In such refusal the court did not err, as what is intended to be understood by the use of words slanderous *per se* is a question of fact for the jury, not of law for the court. The intention of appellant in his use of the objectionable words must be gathered from the evidence. With evidence before the jury from which they might find the intent with which appellant used the words charged was to impute to appellee the crime of larceny, it was the duty of the court to refuse to instruct the jury to find a verdict for appellant. Lake Shore & M. S. Ry. v. O'Conner, 115 Ill. 254.

There are no instructions to the jury asked or given at the instance of either party found in the record, consequently both the assignment and argument of claimed errors in the giving and refusing of instructions are without support.

The record shows that appellant owned an apartment

house with stores on the first floor, at Newberry avenue and 14th street, Chicago, and that the husband of appellee occupied with his family one of the flats as tenant of appellant; that many quarrels and disputes had occurred between appellant and appellee and her husband, which found their way to the police and justice courts for settlement prior to March 28, 1902, and that on that day as appellee was going up the stairs of the apartment house to her flat, and while she was halting upon the stairs to give a scrub woman who was washing the stairway an opportunity to dry a wet stair so that appellee might proceed, appellant intercepted appellee and pointing at her said, within the hearing of the witnesses, Hannah France, Sadie Anderson and Abraham Finkelstein, "She is a thief; look at her monkey face. Take a good look at her, the thief," and used other vile and vulgar language toward and about appellee. While the language here used is slanderous *per se*, yet the intent with which the words were uttered must be gathered from the existent condition and environment at the time they were spoken, the cause of dispute, if any existed, and the relationship of the parties and their bearing and feeling toward each other, if such is developed by the evidence. McKee v. Ingalls, 5 Ill. 30; Zuckerman v. Sonnenschein, 62 Ill. 115.

Appellee's version of the use of the slanderous words by appellant, both as to the words uttered and the time and place of utterance, is corroborated by the witnesses France, Anderson and Finkelstein.

To overcome this, appellant denied uttering the words charged as slanderous, and tendered but one other witness, Max Blume, whose testimony lends no corroboration.

Appellant cites Reed v. Ambridge, 6 C. & P. 308; Bridgman v. Armer, 57 Mo. App. 529; 2 Addison on Torts, Sec. 1119; Egan v. Semrad, 113 Wis. 84, Haynes v. Haynes, 29 Me. 251, and other cases to support the proposition that such words as "He was a damned thief and so was his father before him," "You are nothing but a low down thief," "You are a trifling, low down thief and liar," "thief,"

"confidence man," when uttered in passion of and concerning another, are not actionable if it appears from the evidence and the attendant circumstances that they were not intended to charge a criminal offense.    Yet in every one of these cases, where the question arose, to call another a "thief" was held to be an actionable slander *per se;* and in Haynes v. Haynes, *supra,* it was held that if the evidence makes it doubtful whether the terms were used or applied in a felonious sense, then it is a question for the jury.    Applying these principles to the facts of this case we find that the slanderous words were not provoked by appellee, the record being silent as to her having said aught to appellant at or immediately preceding the time he made the verbal onslaught upon her which included the words forming the *gravamen* of this action.

The question of intent being for the jury, can we say the verdict is against the weight of the evidence when we find that appellant at the same time called appellee a "bitch", a "bastard", "monkey face", which terms could in no sense qualify or limit the generally accepted meaning of the word *thief?*    Neither does their use on the occasion in question tend to explain in any way what, if anything, appellant did mean, or how the words "she is a thief" could be otherwise understood by those persons within whose hearing they were spoken, than to impute the crime of larceny to appellee.    Certainly the vulgar and dirty language made use of by appellant and the obscene attitude then assumed by him toward appellee and the shockingly indecent request he then made of her--language altogether too vile to be here repeated and attitude too gross to be here described—afford no light from which either the jury or this court could say in interpretation that he meant other than to imply that appellee had been guilty of the crime of larceny.    Miller v. Johnson, 79 Ill. 58; Flagg v. Roberts, 67 Ill. 485.

The jury by their verdict have found that appellant intended by the words used to impute to appellee the crime of larceny.    With this verdict we are in full accord.    Whether

the case of McKee v. Ingalls, 5 Ill. 30, which holds that a defendant in an action of slander may explain the meaning of the words used by him to overcome or rebut the presumption of malice which arises from the use of words which are slanderous *per se*, shall be the measure of appellant's legal liability, or the rule claimed to be promulgated in the later case of Nelson v. Borchenius, 52 Ill. 236, that a defendant will not be allowed to say he did not intend the words uttered to be taken in their literal interpretation, in order to escape the legal consequences of his act, is in the condition of this record immaterial, as no explanation by or on behalf of appellant as to what meaning he intended to convey has been either made or offered on his behalf. He is cast to that measure of legal responsibility which the unexplained intended meaning of the slanderous words used condemn him.

Exemplary damages may be given in cases of slander, and malice is presumed where the words uttered are slanderous *per se*. The judgment of $500 for the wanton and unprovoked slander in this case cannot be regarded as excessive. Hintz v. Graupner, 138 Ill. 158; Schmisseur v. Kreilich, 92 Ill. 347; Flagg v. Roberts, 67 Ill. 485.

A careful perusal of the evidence fails to disclose any material error in the rulings of the court upon the admission or refusal of evidence. The verdict is supported by the declaration and justified by the evidence, and the motions for a new trial and in arrest of judgment were rightly overruled.

We find no reversible error in this record, and the judgment of the Superior Court is affirmed.

*Affirmed.*